401 A.2d 1219

ALLIED SECURITY, INC., Appellant,

v.

SECURITY UNLIMITED, INC., Barry J. Quinones, Ronald Carnaval and William Middlemiss.

Superior Court of Pennsylvania.

Argued Oct. 23, 1978.

Decided April 13, 1979.

John E. Hall, of Meyer, Darragh, Bucker, Bebenek & Eck, Pittsburgh, for appellant.

David B. Fawcett, Jr. and with him G. Harold Blaxter, Pittsburgh, for appellees Quinones, Carnaval and Middlemiss.

John N. Scales and with him John W. Pollins, III, Greensburg, for appellee Security Unlimited, Inc.

Before VAN der VOORT, SPAETH and MONTGOMERY, JJ.

SPAETH, Judge:

This is an appeal from an order dismissing appellant's amended complaint on appellees' preliminary objections in the nature of a demurrer.[1]

1. The original complaint was filed August 27, 1975. Allegheny General Hospital, then a defendant, and appellees filed preliminary objections in the nature of a demurrer. The lower court sustained Allegheny General's preliminary objection and as to it dismissed the complaint. The court also sustained appellees' preliminary objections, but with leave to appellant to amend the complaint in accordance with the opinion accompanying the order. Unfortunately, the opinion was largely devoted to explaining the ruling on Allegheny

The amended complaint is diffuse, almost in the extreme. Its gist may perhaps be stated as follows. Appellant is in the business of providing guard and security services. From January 14, 1971, through June 30, 1975, appellant provided such services to Allegheny General Hospital. Appellee Security Unlimited, Inc., is also in the business of providing guard and security services. The individual appellees, Barry J. Quinones, Ronald Carnaval, and William Middlemiss, are employees of Allegheny General. About January 1975, Security Unlimited, "without a privilege to do so, induced or otherwise purposely caused" Allegheny General to discontinue its relationship with appellant. Amended Complaint, para. 1, incorporating by reference para. 3 of original complaint. The amended complaint continues:

4. The intentional, unprivileged, and unjustified actions of Security Unlimited, Inc. which caused Allegheny General Hospital not to continue the aforementioned contract with Allied Security, Inc. and which was done for the purpose of causing Allegheny General Hospital to breach its contract and thereby cause the damages averred hereinafter, consisted of the following acts:

(a) Entering into a combination and conspiracy with co-defendants, Quinones, Carnaval and Middlemiss, to unlawfully interfere with Allied Security, Inc.'s advantageous contractual relationship with Allegheny General Hospital to provide security and guard services and to deprive Allied Security, Inc. of the benefits it could have continued to derive from said relationship.

(b) Fraudulently enticing away employees of Allied Security, Inc. who were already performing services at Allegheny General Hospital for the purpose of having said employees become associated with Security Unlimited, Inc. as security guards by coercing them to accept such positions at Security Unlimited, Inc. and misrepresenting to such employees that they would lose their

General's preliminary objections; it did not state how the court believed appellant would have to amend the complaint to state a cause of action.

jobs at Allegheny General Hospital unless they agreed to become associated with Security Unlimited, Inc. as security guards.

(c) By conspiring with defendants, Quinones, Carnaval and Middlemiss, to bid and accept a contract from Allegheny General Hospital to provide security guards without having the necessary personnel prior to bidding and accepting such jobs.

(d) Intending to weaken and/or ruin Allied Security, Inc.'s position in the security industry by enticing 32 trained hospital guards who were former employees of Allied Security, Inc. to accept employment with Security Unlimited, Inc.

(e) Conspiring with defendants, Quinones, Carnaval and Middlemiss to eliminate competitive bids from other security companies including Allied Security, Inc.

(f) Conspiring with Quinones, Carnaval and Middlemiss to prevent Allied Security, Inc. from securing knowledge that Security Unlimited, Inc. was negotiating or otherwise submitting bids to Allegheny General Hospital to provide security services in order to prevent Allied Security, Inc. from competitively bidding with Security Unlimited, Inc. if that would be necessary or otherwise preventing Allied Security, Inc. from maintaining its advantageous contractual relationship with Allegheny General Hospital.

(g) Conspiring with Quinones, Carnaval and Middlemiss with the intent of misrepresenting to Allied Security, Inc. the relationship between Allied Security, Inc. and Allegheny General Hospital by causing Quinones, Carnaval and Middlemiss to indicate that there was no problems with the service or personnel provided by Allied Security, Inc. and that no change in the security guard contract was being contemplated by Allegheny General Hospital at or about the time the relationship with Allied Security, Inc. was terminated by Allegheny General Hospital.

(h) Conspiring with Quinones, Carnaval and Middlemiss to cause Allegheny General Hospital to accept a non-competitive contract from Security Unlimited, Inc. which among other things provided for a higher rate for guard services than that being charged by Allied Security, Inc. at or about the time of termination.

As appellant states it, the issue before us is whether the amended complaint pleads enough facts to make out a case that appellees intentionally and without privilege interfered with appellant's business relationship with Allegheny General Hospital. Appellant's Brief at 12–13. The tort appellant hopes to prove is a rapidly evolving one; its elements have only recently changed. In *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1961), the Court adopted Section 766 of the Restatement of Torts, which states that " 'one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.' " Since *Birl,* the Court has acknowledged that the Restatement was being revised. *See Glenn v. Point Park College,* 441 Pa. 474, 481, 272 A.2d 895, 899 (1971). More recently, the Court has analyzed a case in the light of several changes proposed to be made to Section 766 and surrounding provisions by the Restatement (Second) of Torts (Tent.Draft No. 23, 1977). *See Adler, Barish, Daniels, Levin, etc. v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978). *And see generally* Wade, *Second Restatement of Torts, Completed, A.B.A. Journal* 366, 368 (March 1979). Section 766(b), which if adopted will in part supersede Section 766, states: "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation when the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or con-

tinuing the prospective relation." Section 768 of the Restatement now states that an actor is "privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor," as long as the actor stays within certain guidelines. The Restatement (Second) proposes to change Section 768, to harmonize it with its version of Section 766, as follows:

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not improperly interfere with the other's relation if

(a) The relation concerns a matter involved in the competition between the actor and the other and

(b) The actor does not employ wrongful means and

(c) His action does not create or continue an unlawful restraint of trade and

(d) His purpose is at least in part to advance his interest in competing with the other.

We might take this occasion to decide whether to announce an adoption of Sections 766 and 768 of the Restatement (Second) as expressing the law of Pennsylvania. We prefer not to go so far. Instead, we shall proceed as did the Supreme Court in *Adler, Barish, Daniels, Levin, etc. v. Epstein, supra,* where the Court stopped short of announcing its adoption of Section 766 but analyzed the case before it in the light of that section.

When the amended complaint is examined in light of Sections 766 and 768 of the Restatement (Second), it will be seen to fail to state a cause of action. Under Section 768, Security Unlimited as a competitor of appellant was entitled to induce Allegheny General not to continue its business relationship with appellant so long as certain conditions were met, among them that Security Unlimited did "not employ wrongful means." *Cf. Gresh v. Potter McCune Co.,*

235 Pa.Super. 537, 344 A.2d 540 (1975); *Bahleda v. Hankison Corporation*, 228 Pa.Super. 153, 323 A.2d 121 (1974). The amended complaint fails to plead wrongful means. Paragraph 4(a) alleges that Security Unlimited conspired with the other appellees to "unlawfully interfere" with appellant's relationship with Allegheny General. This allegation is a mere legal conclusion;[2] it therefore was not admitted by the demurrer. *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976); *Narehood v. Pearson*, 374 Pa. 299, 96 A.2d 895 (1953); *Hexter v. Haverford*, 169 Pa.Super. 168, 82 A.2d 668 (1951). Paragraph 4(b) alleges that Security Unlimited "[f]raudulently enticed" employees from appellant. This allegation contravenes Pa.R.Civ.P. 1019(b), which requires that "[a]verments of fraud or mistake shall be averred with particularity."[3] Paragraphs 4(c)–(h), in describing the relationship between Security Unlimited and the individual appellees, only alleges that they "conspired" with each other to do the acts named; the acts of the individual appellees are alleged in paragraphs 7, 8, and 9 of the amended complaint, but these allegations are as lacking in specificity as are the allegations in paragraph 4.

2. Comment (c) to Section 768 of the Restatement (Second) states that "[c]onduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper." No such conduct is pleaded.

3. The amended complaint's lack of particularity makes it impossible to tell when this alleged enticing occurred. Paragraph 4(c) suggests that on July 1 Security Unlimited did not have enough guards to do the job at the hospital. Paragraph 4(d) states that the necessary guards were obtained by "enticing" away "former employees" of appellant. Taken together, these two paragraphs lead to the conclusion that sometime after July 1, Security Unlimited successfully "enticed" away some of appellant's employees. If all of the "enticing", including the "enticing" complained of in paragraph 4(b), occurred after July 1, it can hardly be said to have "caused" the hospital to breach its contract with appellant, since the hospital would already have decided to employ Security Unlimited by that time. If the "enticing" occurred before July 1, however, and particularly if misrepresentation or coercion was involved, Security Unlimited's conduct may have improperly interfered with appellant's relationship with the hospital. See comment (c) to Section 768 of the *Restatement (Second)*.

Given such a lack of specificity, we might simply affirm the order dismissing the amended complaint. We are mindful, however, that "[t]he right to amend should not be withheld where there is some reasonable possibility that it can be done successfully." *Glenn v. Point Park College, supra,* 441 Pa. at 483, 272 A.2d at 900; *cf. Birl v. Philadelphia Electric Co., supra,* 402 Pa. at 302, 167 A.2d at 475. Here we believe there is such a possibility. Whether interference with a business relationship is actionable may be difficult to determine. Thus, Section 767 of the Restatement (Second) states:

In determining whether an actor's conduct in intentionally interfering with an existing contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) The nature of the actor's conduct,

(b) The actor's motive,

(c) The interests of the other with which the actor's conduct interferes,

(d) The interests sought to be advanced by the actor,

(e) The proximity or remoteness of the actor's conduct to the interference and

(f) The relations between the parties.

Although diffuse, much of the amended complaint suggests that appellant was attempting to describe these factors. Rather than ending the action finally, we believe that in fairness we should give appellant the chance to make another attempt. In reaching this decision we have been influenced by the evolving nature of the law. We emphasize, however, that appellant must recognize that this is its last chance.

Reversed and remanded for further proceedings consistent with this opinion.