626 A.2d 571

**Robert J. TRIFFIN, Appellant,**

**v.**

**Henry H. JANSSEN and Rapp, White, Janssen & German, Ltd. and Robert A. Griffiths and Continental Bank and Stephen D. Chopnick and Kania, Linder, Lasak & Feeney.**

Superior Court of Pennsylvania.

Argued March 9, 1993.

Filed May 19, 1993.

58

Robert J. Triffin, appellant, pro se.

Walter Weir, Jr., Philadelphia, for appellees.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge.

This is a *pro se* appeal from an order granting appellees', Continental Bank and Stephen D. Chopnick, motion for summary judgment and thereby dismissing appellant's, Robert Triffin, second amended complaint as brought against appellees. Appellant presents the following questions for our review:

(1) Whether, the trial court failed to ascertain that [appellant] set forth a viable and *prima facia* cause of action for the intentional interference with performance of a contract by a third person?

(2) Whether, the trial [court] abused its discretion and misapplied the controlling law of [sic] when it granted summary judgment in favor of the appellees without any evidence in support of the contested material averments contained in [appellant's] complaint?

(3) Whether, the trial court prejudicially erred when it determined that consequential economic damages are not recoverable in an action for intentional interference with performance of contract by a third person where such damages are not occasioned by personal injury?

(4) Whether, the trial court prejudicially erred when it determined that "notice" is an element of a viable cause of action for intentional interference with performance of contract by third person?

60

Appellant's Brief at 3. For the reasons set forth below, we affirm.

In 1985, appellant retained Henry Janssen, Esquire, to represent him in an action brought against Continental Bank for $84,908.00 in compensatory damages which appellant alleged had been improperly charged against his checking account. Continental filed a counterclaim for $74,648.40 alleging that appellant fraudulently obtained funds from the bank in a check kiting scheme.

On August 12, 1987, appellant sent Janssen a letter advising him that his services were no longer required and requesting Janssen to file a withdrawal of appearance. Janssen responded in a letter dated August 13, 1987 where he provided that as Bob Griffiths, attorney for Continental, objected to Janssen's withdrawal, a petition under Pa.R.Civ.P. 1012(b) would have to be prepared and filed with the trial court before withdrawal would be proper. Janssen then requested appellant to indicate whether appellant still wanted him to prepare a petition for withdrawal.

Appellant sent a letter to Janssen dated August 17, 1987 wherein he stated that Janssen no longer had the authority to represent him. However, appellant did not discuss how the 1012(b) petition would be handled. By letter dated August 20, 1987, Janssen reiterated that in order for him to properly withdraw as counsel of record, the terms of 1012(b) had to be complied with. Appellant, however, failed to respond to Janssen's August 20 letter and neither appellant nor Janssen ever filed a petition for Janssen's withdrawal. Accordingly, Janssen remained appellant's counsel of record.

The procedural history of the underlying Continental litigation is as follows. After appellant's initial complaint and Continental's counterclaim, a deposition of appellant was scheduled for August 5, 1987. Appellant failed to appear for the deposition and was warned by the trial court that if he continued to do so, he would be sanctioned. A subsequent deposition was scheduled for November 24, 1987 and, without requesting a continuance, appellant again failed to make an

appearance. As a result, the trial court entered an order directing appellant to pay Continental's attorney fees of $150.00. Appellant was then served with a copy of the order and notice of deposition for March 11, 1988. Appellant failed to appear at the March 11th deposition and also failed to pay the $150.00 in counsel fees. As a result, on April 22, 1988, the trial court entered an order dismissing appellant's original complaint with prejudice and precluding appellant from entering evidence in defense of Continental's counterclaim.

Appellant filed an appeal to the Superior Court and on October 27, 1988, the trial court's order was affirmed. A trial on Continental's counterclaim against appellant was scheduled for November 1, 1989. On October 25, 1989, counsel for Continental sent written notice of the trial date to both Janssen and appellant. Neither Janssen nor appellant appeared before the trial court on November 1, 1989. Subsequently, trial proceeded *ex parte* and judgment was entered in favor of Continental and against appellant in the amount of $74,648.08 for the overdraft of appellant's account plus $25,283.93 for the loss of Continental's use of its funds.[1]

Appellant then filed a *pro se* motion to strike the judgment entered. On March 6, 1991, the trial court denied appellant's motion in light of the fact that appellant and his counsel were given notice of the trial date and, because of the sanctions imposed upon appellant, he could not have testified or introduced evidence in his defense. Appellant appealed the trial court's order to the Superior Court, which affirmed the lower court's order. Appellant sought allocatur from the Pennsylvania Supreme Court which was also denied.

On January 8, 1992, appellant filed a multi-count complaint against various parties including appellees, Continental Bank and Stephen Chopnick.[2] Regarding his claim against appellees, appellant alleged that they intentionally interfered with a

---

1. Prior to proceeding *ex parte*, the trial judge telephoned Janssen who informed him that appellant had given him specific instructions not to appear before the trial court.

2. Stephen Chopnick was Continental's in house counsel at the time of the underlying litigation.

contractual relationship. Specifically, appellant contended that appellees wrongfully and intentionally harmed appellant by preventing Henry Janssen from withdrawing as appellant's counsel in the underlying litigation. Appellees filed a motion for summary judgment which was granted by the trial court on July 24, 1992. This timely appeal followed.

Appellant first contends that the trial court erred in failing to find that appellant set forth a *prima facia* cause of action against appellees for intentional interference with performance of a contract by a third person. We disagree.

■ We preliminarily note that while this court is willing to liberally construe materials filed by a *pro se* litigant, appellant's *pro se* status does not entitle him to any particular advantage for lack of legal training. *O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 434, 567 A.2d 680, 682 (1989). The standard applied in reviewing a trial court's order granting summary judgment is as follows:

> A motion for summary judgment may properly be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment may be entered only in cases that are clear and free from doubt. Additionally, the record must be examined in the light most favorable to the non-moving party, accepting as true all well-pleaded facts in its pleadings and giving that party the benefit of all reasonable inferences drawn therefrom. Moreover, in summary judgment proceedings, the court's function is not to determine the facts, but only to determine if a material issue of fact exists. Thus, an order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion.

*Kaller's, Inc. v. John J. Spencer Roofing, Inc.*, 388 Pa.Super. 361, 364, 565 A.2d 794, 795–96 (1989) (citations omitted); *see also* Pa.R.Civ.P. 1035(b).

■ The four elements of a cause of action for intentional interference with contractual relations are as follows: (1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of a privilege or justification for such interference; [3] and (4) damages resulting from the defendant's conduct. *Neish v. Beaver Newspapers, Inc.*, 398 Pa.Super. 588, 599, 581 A.2d 619, 625 (1990), *allocatur denied*, 527 Pa. 648, 593 A.2d 421 (1991).

■ Appellees contend that as appellant has failed to establish that their alleged conduct was neither privileged nor justified, summary judgment was properly granted. In determining whether a particular course of conduct is improper for the purposes of setting forth a cause of action for intentional interference with contractual relations, we must look to § 767 of the Restatement (Second) of Torts [4] which provides as follows:

In determining whether an actor's conduct in intentionally interfering with an existing contract or a prospective contractual relation is improper or not, consideration is given to the following factors:

(a) The nature of the actor's conduct,

(b) The actor's motive,

(c) The interests of the other with which the actor's conduct interferes,

**3.** While some jurisdictions consider a justification for a defendant's interference to be an affirmative defense, Pennsylvania courts require the plaintiff, as part of his *prima facia* case, to show that the defendant's conduct was not justified. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 208–09 n. 7, 412 A.2d 466, 471 n. 7 (1979); *Yaindl v. Ingersoll–Rand Co. Standard Pump–Aldrich Div.*, 281 Pa.Super. 560, 587 n. 15, 422 A.2d 611, 625 n. 15 (1980).

**4.** The courts of this Commonwealth have traditionally applied the Restatement (Second) of Torts in reviewing claims of intentional interference with contractual relations. *See Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971); *Allied Sec., Inc. v. Security Unlimited, Inc.*, 265 Pa.Super. 297, 401 A.2d 1219 (1979); *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), *cert. denied*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979). *See also Green v. Interstate United Management Serv. Corp.*, 748 F.2d 827 (3rd Cir.1984).

(d) The interests sought to be advanced by the actor,

(e) The proximity or remoteness of the actor's conduct to the interference and

(f) The relations between the parties.

Restatement (Second) of Torts § 767 (1982). *See Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 430, 393 A.2d 1175, 1184 (1978). In addition, Comment b to section 767 provides:

The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors.

*Id.*

■ For the following reasons, we find, as a matter of law, that appellees' refusal to consent to Janssen's withdrawal as appellant's attorney was not improper.

First, appellees' alleged conduct was not unlawful, it did not violate any standards of professional conduct and it involved no deceit or misrepresentation. Moreover, appellant does not contend that appellees' actions were motivated by any ill-will or malcontent towards appellant. We agree with appellant that " '[t]he relationship between a lawyer and his client is a serious, vital and solemn one. No third person may interfere with the relationship any more than he may with propriety intervene between a doctor and his patient.' " *Joseph D. Shein, P.C. v. Myers,* 394 Pa.Super. 549, 556, 576 A.2d 985, 988 (1990) (quoting *Richette v. Solomon,* 410 Pa. 6, 8–9, 187 A.2d 910, 912 (1963)). Nonetheless, where a party petitions for the withdrawal of counsel and a new attorney does not simultaneously enter his appearance, the opposing party has a legitimate basis for making an objection. *See* Pa.R.Civ.P. 1012(b)

(the withdrawal of counsel without the simultaneous entry of a new attorney could serve to delay the underlying proceedings). Any "interference" with the attorney-client relationship resulting from the opposing party's objection is a necessary element of our adversarial system.

Furthermore, appellant has not sufficiently shown how appellees' conduct resulted in Janssen's failure to withdraw as appellant's counsel. Whether Janssen was entitled to withdraw as appellant's counsel was within the sole discretion of the trial court. *See* Pa.R.Civ.P. 1012(b);[5] *C.E. Williams Co. v. Henry B. Pancoast Co.,* 412 Pa. 166, 170, 194 A.2d 189, 191 (1963). At most, appellees' conduct could have influenced the trial court's determination of whether Janssen's withdrawal was appropriate. Moreover, as appellant never filed a 1012(b) petition as suggested by Janssen, the trial court never had an opportunity to grant Janssen leave to withdraw.

After carefully reviewing the record in the light most favorable to appellant, we find that appellant has failed to set forth a *prima facia* cause of action for intentional interference with contractual relations. Accordingly, we affirm the trial court's order granting appellees' motion for summary judgment.[6]

Order affirmed.

---

5. Pa.R.Civ.P. 1012(b) provides:
   (b) an attorney's appearance for a party may not be withdrawn without leave of court unless another attorney has entered or simultaneously enters an appearance for the party and the change of attorneys does not delay any stage of the litigation.
   *Id.*

6. Because of our disposition of appellant's first claim, we need not address the other issues raised.