**Savoia v. Wal-Mart Stores Inc.**

C.P. of Chester County, No. 2014-00746-IR

*Todd B. Nurick* and *Brian M. Andris*, for plaintiffs
*Heather C. Giordanella*, for defendant

TUNNELL, *J.*, Oct. 15, 2014—

## ORDER

And now, this day of , 2014, upon consideration of defendant's preliminary objections to plaintiffs' second amended complaint, plaintiffs' response thereto, the respective briefs in support, and all other matters of record, it is hereby ordered and decreed as follows:

1. Defendant's objections to plaintiffs' claim for Tortious Interferences with an Existing Contractual Relationship in Counts II and III of the second amended complaint are overruled;

2. Defendant's objection to plaintiffs' claim for tortious interference with prospective contractual relations in Counts II and III of the second amended complaint are sustained;

3. Defendant's objection to plaintiffs' claim for civil conspiracy in Count IV of the second amended complaint is sustained in part and overruled in part: To the extent the predicate cause of action for plaintiffs' claim of civil conspiracy is plaintiffs' claim for Tortious Interference with Prospective Contractual Relations, the objection is sustained; to the extent the predicate cause of action for plaintiffs' claim of Civil Conspiracy is plaintiffs' claim for Tortious Interference with an Existing Contractual Relationship, the objection is overruled; and

4. Defendants' objection to plaintiffs' claim for an

injunction in Count VII of the second amended complaint is overruled.

Plaintiffs are granted leave to file a third amended complaint within twenty (20) days of the date this order is docketed solely as to the following:

a) Plaintiffs' claim for Tortious Interference with Prospective Contractual Relations; and

b) Plaintiffs' claim for civil conspiracy where the predicate cause of action is a claim for Tortious Interference with Prospective Contractual Relations.

Should plaintiffs fail to file a third amended complaint in said time, the second amended complaint shall become the operative complaint, as modified by the terms of this order, and defendant shall file an answer to the second amended complaint within twenty (20) days thereof.[1]

---

1. On June 20, 2014, Defendant, Wal-Mart Stores, Inc., d/b/a Wal-Mart and/or Wal-Mart Supercenter and/or Wal-Mart Store #5795 (hereinafter "Wal-Mart") filed preliminary objections to Plaintiffs' Second Amended Complaint ("Complaint") on grounds of legal insufficiency (demurrer) and insufficient specificity in a pleading. Plaintiffs' filed a response in opposition on July 10, 2014, and both parties filed briefs in support of their respective positions. Upon review of the objections, Plaintiffs' response, and all other matters of record, the objections will be sustained in part and overruled in part.

Wal-Mart first asserts that Counts II and III of Plaintiffs' Complaint, which purport to set forth claims for, respectively, "*Tortious Interference with Contractual Relations*" and "*Tortious Interference with Business Relations*", must be dismissed as legally and factually insufficient. *See*, Pa.R.C.P. No. 1028(a)(3), (4). More specifically, Wal-Mart argues that the allegations of Plaintiffs' Complaint set forth no more than "bald assertions and speculation" rather than the specific, "material facts" necessary to support Plaintiffs' claims.a (Def.'s Obj. at ¶¶ 22 — 23)

The elements of a cause of action for intentional interference with a contractual relation, whether existing or prospective, are as follows:

1. the existence of a contractual, or prospective contractual relation between the complainant and a third party;

2. purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

3. the absence of privilege or justification on the part of the defendant; and

4. the occasioning of actual legal damage as a result of the defendant's conduct.

*Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. 2003)(quoting, *Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa.Super.1997)); *see also, Phillips v. Selig*, 959 A.2d 420, 428-29 (Pa. Super. 2008).

Plaintiffs' Counts II and III purport to set forth claims for interference with existing and prospective contractual relations. (*See* Plf.s' Com. at ¶¶ 67, 71, 73, 82, 86). Although related, these claims are independent causes of action, *Phillips*, 959 A.2d at 428-29, and the Court will therefore analyze Wal-Mart's objections to each claim separately.

Interference with Existing Contractual Relations

Plaintiffs have obviously satisfied the pleading requirement of the first element, as the franchise agreement between Plaintiffs and former Defendant, JTH Tax, Inc., d/b/a Liberty Tax Service (hereinafter "LTS"), constitutes an existing contract. The second element requires a plaintiff to allege that the defendant acted "for the specific purpose of causing harm to the plaintiff." *Id.* at 429 (internal citation omitted); *see also, Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971) (The tort of interference with contract "is an intentional one: the actor is acting as he does [f]or the purpose of causing harm to the plaintiff"). The third element requires a plaintiff to aver that the defendant's actions were without privilege or justification, i.e., were "improper under the circumstances presented". Phillips, 959 A.2d at 429; *see also, Empire Trucking Co. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 934 (Pa. Super. 2013) ("[I]n order to succeed in a cause of action for tortious interference with a contract, a plaintiff must prove not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper."). In determining whether a plaintiff has sufficiently alleged that the defendant acted improperly, a trial court takes account of the following factors listed in the Restatement (Second) of Torts, Section 767:

(a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

Restatement (Second) of Torts § 767, cmt. b. (hereinafter "Restatement"); *Empire Trucking Co.*, 71 A.3d at 934; *Philips*, 959 A.2d at 430. Allegations of both an intent to harm and improper conduct are required because, in most cases, "the defendant's intentional conduct is done at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff." *Ibid.* (internal quotation and citation

omitted). Thus, the overarching inquiry on whether a defendant acted improperly is whether the defendant's conduct is "sanctioned by the rules of the game which society has adopted." *Glenn*, 272 A.2d at 899; *see, e.g., Triffin v. Janssen*, 626 A.2d 571, 575 (Pa. Super. 1993) (Refusal to consent to withdrawal of opposing party's attorney was not improper because conduct was consistent with the rules of court); *Small v. Juniata College*, 682 A.2d 350, 354 (Pa. Super. 1996) (Players on football team did not act improperly by voicing negative opinions of coach to college administration, which, upon investigation, discharged him, since in the academic world students are encouraged to voice their opinions).

Applying these standards to the Complaint at bar, the Court finds that it sufficiently avers tortious interference with an existing contractual relationship such that Wal-Mart's objections must be overruled. On demurrer, the Court accepts as true all material facts set forth in the complaint and all inferences reasonably deducible therefrom. *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 208 (Pa. Super. 2012). Similarly, in determining whether the allegations of a complaint have been set forth with the requisite factual specificity, the court considers whether the complaint "is sufficiently clear to enable the defendant to prepare his defense," or "whether the plaintiff's complaint informs the defendant with accuracy and completeness of the specific basis on which recovery is sought." *Rambo v. Greene*, 906 A.2d 1232, 1236 (Pa. Super. 2006). The close relationship between preliminary objections to legal and factual sufficiency is clear. As explained by the court in *Rambo*, once a plaintiff pleads the elements of a cause of action, "the question *then* becomes whether the pleading was sufficiently specific" as to the elements of that claim. *Id.* at 1236 (emphasis in original).

In this case, the franchise agreement entered into between Plaintiffs and LTS provides that LTS was prohibited from establishing a separate "franchised or company owned outlet . . . . [within Plaintiffs'] Territory" of operation. (Plfs.' Ex. A, B, at 3, 3-4). However, an exception to that prohibition exists with regard to LTS's relationship with certain retail businesses. The franchise agreement states, in relevant part:

> [LTS] may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional account in your Territory, you may choose to operate a tax return preparation service office in that outlet by communicating such decision to us by January 1 before a given Tax Season. In the event that you choose not to operate in an outlet which exists in your Territory, we may operate in that outlet in your Territory. If we do so, all associated revenue and expenses are ours, along with the future right to service such customers. The term "Tax Season" as used in this Agreement means January 2 through April 30.

(*Ibid.*). The Complaint avers that Plaintiff, Christopher Savoia ("Savoia"), was interested in expanding his Liberty Tax business by opening a second franchise location in the newly constructed Wal-Mart "Supercenter" in Oxford, Pennsylvania, but that he was repeatedly advised by representatives of LTS and former Defendant, DAT, LLC, that

no such opportunity existed. (*See* Plfs.' Com. at ¶¶ 25 — 30). Plaintiffs' Complaint further avers that on November 6, 2013, unbeknownst to Savoia, a meeting occurred between an LTS representative and the Oxford Wal-Mart store manager to discuss "setting up an LTS kiosk" at the Oxford Wal-Mart store location. (*Id.* at ¶ 31). Savoia finally learned of the planned kiosk on December 23, 2013, and submitted a complaint (what the parties' have referred to as an "issue") to LTS "Support Central" to inquire as to why a kiosk location would be opening in his territory of operation without prior notice to him and after he had repeatedly inquired about the same opportunity. Three days later, Savoia was informed by a DAT representative that an LTS representative contacted Wal-Mart on December 23 with regard to Plaintiffs' "issue". Plaintiffs further aver that on December 28 an LTS representative sent an e-mail to a DAT representative in which she stated: "*We will contact our Wal-Mart team to see if this is one that we can back out of.*" (*Id.* at 37). Subsequently, on January 2, 2014, Savoia was contacted by an LTS representative who advised him that (1) "he must operate the Oxford Wal-Mart [kiosk] location"; and (2) if he did not operate the location, LTS would (a) strip him of status as a "Top Gun" franchisee within the company; and (b) proceed to operate the kiosk independently (and in direct competition with) Plaintiffs' business. (Id. at 39). Thus, Plaintiffs' have averred that soon after LTS's "contact" with Wal-Mart, Savoia was presented with an ultimatum that was contrary to the terms of Plaintiffs' franchise agreement pertaining to LTS's independent operation of a "company owned" outlet.

Accepting these allegations as true, the Court finds that they are minimally sufficiently to set forth a claim for tortious interference with an existing contractual relationship. One reasonable set of inferences to be drawn from the Complaint is that, following Plaintiffs' submission of the December 23 "issue" to LTS Support Central, LTS became aware that it was potentially acting in breach of its franchise agreement by proceeding to set up (and ultimately operate) a LTS kiosk in the Oxford Wal-Mart location. As a result, LTS contacted Wal-Mart on December 23 to address the "issue", and again on December 28 to determine if the kiosk arrangement was "*one that we can back out of*". Despite this, on January 2, Savoia was informed by a representative of LTS that plans for the new kiosk would continue, with or without his participation. These allegations support the inference that Wal-Mart was informed that operation of an LTS kiosk within its Oxford store location was a potential breach of the Plaintiffs-LTS franchise agreement, but that Wal-Mart, nonetheless, required the planned LTS kiosk to proceed. The Court finds that these allegations adequately allege "improper" conduct that was done with the requisite intent to support Plaintiffs' claim, and reaches this conclusion for the following reasons:

First, a plaintiff adequately pleads the intent necessary to support a claim for tortious interference with an existing contractual relationship even if the plaintiff's allegations fall short of establishing that that the defendant acted with the "primary purpose" of interfering with the performance of a contract. Comment j to Section 766 of the Restatement

514

explains that intent is established even in cases "in which the actor does not act for the purpose of interfering with the contract … but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." Restatement, § 766, cmt. j.; *see also, Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, A.2d 1175 (Pa. 1978) (Adopting Section 766 of the Restatement); *Walnut St. Associates, Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 100 (Pa. Super. 2009) *aff'd*, 20 A.3d 468 (Pa. 2011) (Noting that "Pennsylvania is a 'Restatement state' " that has "repeatedly looked to the Restatement as authority for the elements of a cause of action for intentional interference with existing contract relations.") (internal quotation and citation omitted). Thus, while it is true, as Wal-Mart points out, that Plaintiffs' allegations do not support the inference that Wal-Mart acted with the "primary" or exclusive purpose to interfere with the Plaintiffs-LTS contractual relationship, they do amply support the inference that Wal-Mart was aware its actions could have that incidental effect.

Second, the tort does not obligate a plaintiff to plead that the defendant "appreciated the legal significance of the facts giving rise to the contractual duty" with which the it interferes. Restatement, § 766, cmt. i. For example, liability may still attach despite a defendant's belief that the agreement "is not legally binding or has a different legal effect from what it is judicially held to have." *Ibid.* Rather, all that is necessary as a predicate to the action is that the defendant "have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract", something that Plaintiffs have adequately alleged in this case. *Ibid.*

Finally, the Court's consideration of whether Wal-Mart acted without "privilege or justification", *i.e.*, whether Plaintiffs' allegations give rise to an inference of conduct "improper under the circumstances", weighs in favor permitting the claim to proceed, at least at this stage of the ligation. Indeed, the Court remains cognizant of the Restatement's admonition that, if the contractual interference is brought about "only as a necessary consequence of the conduct of the actor engaged in [it] for an entirely different purpose, his knowledge of [the interference] makes the interference intentional, but the [Section 767] factor of motive carries little weight toward producing a determination that the interference was improper." Restatement, § 767, cmt. d.; *see also, ibid.* ("Intent alone . . . may not be sufficient to make the interference improper, especially when it is supplied by the actor's knowledge that the interference was a necessary consequence of his conduct rather than by his desire to bring it about."); *cf., Empire Trucking*, 71 A.3d at 934 (Noting that the tort's second and third elements of intent and improper conduct are "closely intertwined"). But the Court does not view the allegations of the Complaint as only supporting the inference that the contractual interference was purely a "necessary consequence" of Wal-Mart's alleged conduct. This is particularly true in light of LTS's initial willingness to see if the

kiosk arrangement was one that they could "*back out of*", and then its change of tune some five days later, *after contacting Wal-Mart*, in which LTS advised Savoia that he must either immediately take over operation of the kiosk or suffer the consequence of the loss of his "Top Gun" status and the establishment of a competitor business located within his territorial region. In sum, the Court finds that Plaintiffs' Complaint adequately sets forth a claim for tortious interference with an existing contractual relationship, and further adequately appraises Wal-Mart "of the specific basis on which recovery is sought." *Rambo v. Greene*, 906 A.2d at 1236. Wal-Mart's objection is, accordingly, overruled.b

Interference with Prospective Contractual Relations

Unlike a claim for interference with an existing contract, a claim for interference with prospective contractual relations requires a more scrutinizing analysis of the first element of the action, *i.e.*, adequately pleading the existence of a "prospective contractual relation between the complainant and a third party". Wal-Mart argues that the Complaint falls short of the factual averments necessary to sustain Plaintiffs' claim. The Court agrees.

"Defining a 'prospective contractual relationship' can be difficult. As our Supreme Court has commented, 'to a certain extent, the term has an evasive quality, eluding precise definition. It is something less than a contractual right, something more than a mere hope.'" *Phillips*, 959 A.2d at 428 (quoting in part *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979)). "[A]nything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. There must be something more than a mere hope or the innate optimism of the salesman." *Phillips*, 959 A.2d at 428 (quoting *Glenn, supra*, 272 A.2d at 898-99).

In this case, Plaintiffs have alleged that Wal-Mart's actions "interfered with Plaintiffs' prospective contractual relations with clients." (Plfs.' Com. at ¶ 71; *see also, id.* at ¶ 86). In support of that assertion, Plaintiffs aver "the competing LTS location confused Mr. Savoia's loyal customers into believing that he was affiliated with the competing location, and the competing location also pulled prospective clients, within Mr. Savoia's exclusive area, away from Plaintiffs' LTS location to the competing kiosk." (*Ibid.*). The Court finds that such allegations are woefully inadequate to support Plaintiffs' claim of prospective interference. As an initial matter, the mere "confusion" of an existing customer base, without more, is not relevant for purposes of the claim, since the tort is designed to address the loss of prospective, *i.e.*, soon-to-be, contractual relationships. In addition, the allegation that the LTS kiosk "pulled prospective clients ...away" simply fails to support an inference of a "reasonable likelihood" that Plaintiffs would have entered into contractual relations for the provision of tax services with prospective clients had it not been for the placement of the kiosk. *See, Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 666 (Pa. Super. 2010) (Sustaining trial court's grant of a demurrer on prospective interference claim because the complaint "[did] not provide a scintilla of information regarding the purported

contractual relationships."). The Court is thus left with mere speculation, rather than the facts necessary to support the claim. *See, Lerner v. Lerner*, 954 A.2d 1229, 1235 (Pa. Super. 2008). Wal-Mart's objection to Plaintiffs' claim for claim for tortious interference with prospective contractual relations is, accordingly, sustained.

Civil Conspiracy

In its second objection, Wal-Mart asserts that Count IV of the Complaint is legally insufficient because a claim for civil conspiracy "is not an independent cause of action and, therefore, must be based on a viable underlying cause of action." (Def.'s Obj. at ¶32). Because Plaintiffs have not sufficiently established "an underlying claim on which a claim for civil conspiracy can be based", argues Wal-Mart, Count IV of the Complaint must be dismissed. (*Ibid.*)

In order to state a civil action for conspiracy, a complaint must allege: "1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004). Wal-Mart also correctly points out that "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Ibid*; *see, e.g.*, *Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Super. 2013) (Under Pennsylvania law, a "conspiracy claim will not lie without a valid underlying civil claim."); *Gordon v. Lancaster Osteopathic Hospital Association, Inc.*, 489 A.2d 1364, 1368, 1372 (Pa. Super. 1985) (No cause of action for conspiracy to defame where no basis for defamation action). In addition, the act underlying a civil conspiracy claim must be based on criminal or intentional conduct: "[s]trict liability and negligence counts are insufficient to support [a] civil conspiracy claim." *Gordon, supra*, 854 A.2d at 590; *see also Burnside v. Abbott Labs.*, 505 A.2d 973, 982 (Pa. Super. 1986) (Holding that plaintiffs' failed to state a claim for civil conspiracy because allegations of "no more than a contemporaneous and negligent failure to act" were "insufficient to state either a conspiratorial agreement or the requisite intent to cause injury.").

Here, the entirety of Wal-Mart's objection is that Plaintiffs have failed to set forth predicate claims for intentional interference with existing and prospective contractual relations. (*See* Def.'s Obj. at ¶ 32). These are both intentional torts, *Reading Radio*, 833 A.2d at 211, and therefore will support a claim of civil conspiracy provided that they are otherwise adequately alleged. As explained *supra*, the Court has found that Plaintiffs have set forth a claim for interference with an *existing* contract, but failed to set forth a claim for interference with prospective contract relations. As such, the Court will sustain Wal-Mart's objection only insofar as Plaintiffs' claim is rooted in Wal-Mart's alleged interference with Plaintiff's prospective contracts relations. Insofar as the claim is rooted in Wal-Mart's alleged interference with Plaintiffs' existing contractual relationship with LTS, the objection is overruled.

Injunction

Finally, Wal-Mart has demurred to Plaintiffs' claim for an injunction to permanently enjoin it from opening and operating an LTS kiosk at its Oxford Supercenter location. Wal-Mart argues that Plaintiffs' claim for injunctive relief is legally insufficient because (1) "the tortious interference and civil conspiracy claims . . . fail[] as a matter of law"; and (2) Plaintiff has, in any event, "failed to include any allegations that would support an injunction . . . under the applicable standard."c (Def.s' Obj. at ¶ 35 — 36).

"To prevail on a claim for a permanent injunction, the plaintiff must establish a clear right to relief, that there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and that greater injury will result from refusing rather than granting the relief requested." *Watts v. Manheim Twp. Sch. Dist.*, 84 A.3d 378, 390 (Pa. Cmwlth. 2014), *appeal granted*, 2014 WL 4494201 (Pa. Sept. 12, 2014) (internal citation omitted). In contrast to a preliminary injunction, a permanent injunction does not require a showing of irreparable injury or the necessity of immediate relief. *WellSpan Health v. Bayliss*, 869 A.2d 990, 995 (Pa. Super. 2005). Instead, "the plaintiff must show that an actual and substantial injury has occurred and/or is threatened in the future." *Ibid.* A trial court may issue a permanent injunction if it is necessary to prevent a legal wrong for which there is no adequate remedy at law. *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002).

A demurrer to a claim for injunctive relief faces a high hurdle. "To prevail on preliminary objections in the nature of a demurrer to a claim for injunctive relief, a court must find that the [claim] is clearly insufficient to establish a right to injunctive relief, and any doubt must be resolved in favor of overruling the demurrer." *Harding v. Stickman*, 823 A.2d 1110, 1111 (Pa. Cmwlth. 2003) (citing *P.J.S. v. Penn. State Ethics Comm'n*, 669 A.2d 1105, 1113 (Pa. Cmwlth. 1996)). Judge by that standard, it is clear that Wal-Mart's objection must be overruled. As an initial matter, Wal-Mart cannot rely on the legal insufficiency of Plaintiffs' tortious interference and civil conspiracy claims to sustain its objection, as the Court has already determined that these claims, at least in part, survive Wal-Mart's demurrer. (*See* discussion, *supra.*) Moreover, it is simply incorrect to assert that Plaintiffs have failed to set forth *any* allegations that would support the issuance of a permanent injunction. Plaintiffs have averred Wal-Mart's contractual interference with their franchise agreement by allowing the placement of an independently operated LTS kiosk in the Oxford Supercenter location; that permanently enjoining Wal-Mart from allowing the placement and operation of such a kiosk in the future is necessary because the potential loss in revenue to Plaintiffs' business would be speculative and "impossible to calculate"; and that the injury Plaintiffs would sustain from a refusal to issue the injunction — in the form of a loss of Plaintiffs' customer base and future business opportunities — would be greater than any injury sustained by Wal-Mart if operation of the LTS kiosk was enjoined. (*See* Plfs.' Com. at ¶¶ 128-130). That is all that is necessary to survive demurrer. Wal-Mart's final preliminary objection is, accordingly, overruled.

---

Internal Footnotes

a   As Wal-Mart points out, the allegations of Counts II and III are virtually identical and repetitious save for the labeling of Count II as one for interference with "contractual" relations and Count III as one for interference with "business" relations. The Court finds that both counts purport to set forth no more than claims for tortious interference with existing and prospective contractual relations, and will therefore treat each count as one and the same. *See, Egan v. USI Mid-Atl., Inc.*, 92 A.3d 1, 21 (Pa. Super. 2014) ("[I]t is the duty of the court to discover from the facts alleged in a complaint the cause of action, if any, stated therein.") (quoting *Cardenas v. Schober*, 783 A.2d 317, 325 (Pa. Super. 2001)).

b   The Court notes that certain other factors that a trial court considers in determining whether a defendant's actions were "improper" also weigh in favor of allowing Plaintiffs' claim to proceed. *See*, Restatement, § 766, cmt. f (Noting that typically the interests sought to be advanced by the actor through the interference are "economic" in nature, but that if the interests of the complaining party are already "consolidated into the binding legal obligation of a contract, [then] that interest will normally outweigh the actor's own interest in taking that established right from him."); *Id.* at § 767, cmt. h (Considering whether the conduct of the actor caused either direct or indirect harm to the plaintiff).

c   Wal-Mart's objection refers the Court to *Cappiello v. Duca*, 672 A.2d 1373 (Pa. Super. 1996) for the proposition that Plaintiffs have failed to allege those facts necessary for issuance of a preliminary injunction. The Court notes that Plaintiffs' Count VII seeks issuance of a *permanent* injunction, the propriety of which is analyzed under a different standard. *See, e.g., WellSpan Health v. Bayliss*, 869 A.2d 990, 995 (Pa. Super. 2005)