Richard G. PHILLIPS, et al.,

v.

Alan H. "BUD" SELIG, et al.

No. CIV.A. 01–CV–363.

United States District Court,
E.D. Pennsylvania.

March 28, 2001.

· Clifford E. Haines, Theodore J. Caldwell, Jr., Litvin, Blumberg, Matusow & Young, Philadelphia, PA, for Plaintiffs.

Joseph J. Costello, Steven R. Wall, Michael S. Burkhardt, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Andrew M. Gutterman, Howard L. Ganz, Proskauer Rose LLP, New York City, David E. Sandel, Jr., White and Williams, Philadelphia, PA, Thomas J. Ziomek, White and Williams, Philadelphia, PA, Charles S. Fax, Larry S. Gibson, Shapiro Sher & Guinot, Baltimore, MD, for Defendants.

### MEMORANDUM

PADOVA, District Judge.

Plaintiffs Richard G. Phillips and Richard G. Phillips Associates P.C. originally filed the instant suit in the Court of Common Pleas for Philadelphia County against Defendants Alan H. Selig, the Office of the Commissioner of Baseball, Robert Manfred, Richard Alderson, Francis Coonelly, American League of Professional Baseball Clubs, National League of Professional Baseball Clubs, David Phillips, Joseph Brinkman, John Hirschbeck, Timothy Welke, Ronald Shapiro, Shapiro and Olander, Shapiro Negotiations Institute, and the World Umpires Association. On January 24, 2001, Defendants filed a Notice of Removal alleging that the Court has original federal question jurisdiction over the action because the claims asserted in the Complaint are completely preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1] Before the Court is Plaintiffs' Motion to Remand. For the reasons that follow, the Court grants Plaintiffs' Motion.

### I. BACKGROUND[2]

Richard Phillips ("Phillips") is an attorney; Richard G. Phillips Associates P.C. ("RGPA") is a law firm incorporated in Pennsylvania. Alan Selig ("Selig") is the commissioner of major league baseball. The Office of the Commissioner of Baseball ("Commissioner's Office") is an unincorporated association whose members consist of the American League of Professional Baseball Clubs ("American League"), the National League of Professional Baseball Clubs ("National League"), and the individual baseball franchises who comprise those clubs. Robert Manfred, Richard Alderson, and Francis Coonelly (collectively "Commissioner Employees") all are employed by the Commissioner's Office. The American League is an association of major league baseball franchises that compete within the American League. Similarly, the National League is an association of major league baseball franchises that compete within the National League. David Phillips, Joseph Brinkman ("Brinkman"), John Hirschbeck ("Hirschbeck"), Timothy Welke ("Welke") (collectively

---

1. No diversity jurisdiction over this case exists since both Plaintiffs and one Defendant are alleged to be Pennsylvania residents. (Compl.¶¶ 1, 2, 14.)

2. The following allegations are outlined in the Complaint and the Notice of Removal.

"Umpires") are umpires employed by the American League. Ronald Shapiro ("Shapiro") is an attorney licensed in Maryland and a principal of both Shapiro and Olander ("Shapiro Firm"), a law firm in Maryland, and the Shapiro Negotiations Institute ("Shapiro Institute"), a corporation that provides educational and consulting services in the area of labor negotiations. The World Umpires Association ("WUA") is an association that represents major league umpires in collective bargaining with the American League and National League (collectively "Leagues").

Since 1979, Plaintiffs had been counsel to the Major League Umpires Association ("MLUA"), formerly the exclusive bargaining agent for major league baseball umpires prior to the WUA. Plaintiffs and the MLUA entered into a series of retainer agreements each lasting for five-year terms. The last such agreement was set to expire on April 10, 1999. The retainer agreements generally provided for payment to Plaintiffs of annual retainer and administrative fees, as well as a percentage of the compensation negotiated in any collective bargaining agreement during the life of the agreement. The last collective bargaining agreement negotiated between the MLUA and the Leagues ("Collective Bargaining Agreement") expired on December 31, 1999.

During this time, the Umpires were members of the MLUA, and Welke was a member of the MLUA board of directors. In the fall of 1998, Brinkman, Welke, and Hirschbeck began making disparaging and false statements about Plaintiffs' professionalism and integrity in an effort to convince the MLUA and its membership not to renew the retainer agreement with Plaintiffs and instead to retain Shapiro and the Shapiro Firm as legal counsel. The MLUA membership, however, voted to renew the agreement ("Retainer Agreement") for a four-year term from April 10, 1999, to April 10, 2003.

Prior to 1999, Selig secretly attempted to usurp powers relating to the employment relationship between umpires and the baseball leagues originally possessed by the Leagues for the purpose of interfering with the contractual relationship between the MLUA and Plaintiffs. Selig personally disliked Richard Phillips because he supported a different candidate for the position of commissioner. When Plaintiffs learned about Selig's activities, they lodged objections with the Leagues. Selig then temporarily abandoned his plan.

In February 1999, Selig, the Commissioner's Office, and the Commissioner Employees (collectively "Commissioner Defendants") again tried to directly control the umpires employment relationship with the Leagues by requiring the Leagues to obtain their approval of matters relating to the umpires' employment. The Commissioner Defendants also made defamatory statements about Plaintiffs to convince MLUA members that difficulties in contract negotiations were caused by Plaintiffs. As a result, MLUA members began calling for a strike during the first half of the 1999 baseball season. A general MLUA membership meeting was held on July 14, 1999. To avert a potential strike, Phillips and the MLUA president suggested that MLUA members submit written notices of intent to resign to the Leagues with the resignations to be effective on September 2, 1999, unless their grievances were addressed. This suggestion was accepted and implemented by all of the umpires attending the July 14 meeting.

Although the National League supported the umpires' strategy, Brinkman, Hirschbeck, and Shapiro conspired with the Commissioner Defendants to induce the MLUA membership to sever its relationship with Plaintiffs. The American

League and the Commissioner's Office began to issue statements to intimidate the umpires and erode support for Richard Phillips and the MLUA. Defendants Brinkman, Hirschbeck, and Shapiro made false statements attacking Richard Phillips as incompetent and urged umpires to rescind their resignations, disavow their support for the MLUA, and seek termination of the Retainer Agreement. The Commissioner Employees also advised Shapiro and Hirschbeck that the Leagues would enter into a more favorable collective bargaining agreement with the umpires if Plaintiffs were not MLUA counsel, would refuse to bargain with the MLUA if Plaintiffs remained MLUA's counsel, and would indemnify the MLUA for damages in connection with any breach of the Retainer Agreement. This allegedly false information was disseminated to MLUA members, causing them to rescind their resignations.

On July 22, 1999, Selig, the Commissioner Employees, and League representatives met and Selig proposed a plan to hire replacement umpires from the minor leagues for the purpose of coercing the MLUA to eliminate its relationship with Plaintiffs. The plan would deprive the MLUA membership of the right to rescind their resignations and hence eliminate support for Plaintiffs. The Leagues opposed the plan, but Selig forced them to acquiesce. The Commissioner Employees told Hirschbeck, Brinkman, and Shapiro of the plan so that they could warn select members of the MLUA to rescind their resignations. Following the July 22 meeting, at the behest of the Commissioner Employees, the Leagues hired twenty-five new umpires and refused to permit rescission of the resignations of twenty-two MLUA members.

Hirschbeck, Brinkman, and Shapiro sought David Phillips and Welke's help in convincing MLUA members to terminate the MLUA's relationship with Plaintiffs. Subsequently, the Umpires, Shapiro, and the Shapiro Firm made various defamatory statements to MLUA members and the public about Plaintiffs' integrity, professional competence and ethics. These Defendants also told MLUA members that the Commissioner would refuse to negotiate with Plaintiffs. Later, these Defendants organized efforts to decertify the MLUA and created the WUA to replace the MLUA as the bargaining representative for major league umpires. On February 24, 2000, the major league umpires voted to decertify the MLUA in favor of the WUA. Plaintiffs believe that the establishment and certification of the WUA is a guise to terminate the relationship between Plaintiffs and the major league umpires, and install Shapiro and the Shapiro Firm as legal counsel to the major league umpires.

Plaintiffs' Complaint states ten counts all of which purportedly arise under state law, including tortious interference with existing and prospective contract, defamation, invasion of privacy, fraudulent conveyance, injurious falsehood, conspiracy, commercial disparagement, unjust enrichment, and breach of contract. On January 24, 2001, Defendants Shapiro and the Shapiro Firm filed a timely Notice of Removal to which all Defendants separately consented. The Notice of Removal states that the Complaint's claims are completely preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because they are dependent upon an interpretation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.

## II. LEGAL STANDARD

 Removability is determined from a plaintiff's pleadings at the time of remov-

al. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 95 L.Ed. 702 (1951). A defendant may remove a civil action filed in state court if the federal court would have had original jurisdiction to hear the matter. 28 U.S.C. § 1441(b) (1994); *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). The defendant bears the burden of establishing removal jurisdiction and compliance with all pertinent procedural requirements. *Boyer,* 913 F.2d at 111. Once the case has been removed, the court may remand if the removal is procedurally defective or subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c) (1994). All doubts should be resolved in favor of remand. *Boyer,* 913 F.2d at 111.

## III. DISCUSSION

Plaintiffs seek remand of this action on several grounds. Primarily, Plaintiffs argue that the Complaint alleges solely state law claims in relation to a contract that is not subject to the LMRA and does not state any claims under the LMRA. Alternatively, Plaintiffs claim that the removal was procedurally defective because Defendants failed to attach two orders of the Court of Common Pleas to the Notice of Removal, and Defendant David Phillips failed to consent to removal within thirty days of service of the Complaint. The Court determines that removal of this case was inappropriate because the claims raised in this case do not arise under section 301 of the LMRA. Accordingly, the case will be remanded for lack of subject matter jurisdiction to the Court of Common Pleas for Philadelphia County.[3]

■ Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Accordingly, absent diversity of citizenship, federal-question jurisdiction is required for removal. *Id.* The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Id.; Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 353 (3d Cir.1995). Under the well-pleaded complaint rule, a case ordinarily may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425 (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). An exception to the well-pleaded complaint rule exists, however, where Congress has so completely preempted a particular area of law that any civil complaint raising that group of claims is necessarily federal in character. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

■ Section 301(a) of the LMRA provides:

[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any District Court of the United States having jurisdiction over the parties.

---

**3.** Having determined that subject matter jurisdiction is lacking, the Court declines to address Plaintiffs' alternative arguments regarding defects in the removal procedure.

29 U.S.C. § 185(a) (1994). Section 301 is not only jurisdictional, "it authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Beidelman v. Stroh Brewery Co.*, 182 F.3d 225, 231–32 (3d Cir.1999) (quoting *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). In light of this mandate, the United States Supreme Court has held that any state-law cause of action for violation of a collective bargaining agreement or other contract governed by section 301 of the LMRA is completely preempted by federal law because of the need for uniform interpretation to facilitate negotiation and administration of such collective bargaining contracts. *Beidelman*, 182 F.3d at 232 (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)).

 A plaintiff's state law claims are preempted by section 301 when resolution of that claim is substantially dependent upon an analysis or the meaning of the terms of a labor agreement governed by section 301, or is inextricably intertwined with the consideration of the terms of the agreement. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–6, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Berda v. CBS, Inc.*, 881 F.2d 20, 27 n. 8 (3d Cir.1989). Section 301, however, does not preempt every dispute that tangentially concerns the terms of a collective bargaining agreement. *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. 1904. Claims that are independent of a collective bargaining agreement, even if they are between employees and employers, are not removable. *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir.1996). Additionally, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-

bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Beidelman*, 182 F.3d at 232 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)). Applying the standard requires courts to analyze the elements of the alleged state law claims to determine whether their resolution requires construal or interpretation of a labor agreement governed by section 301. *See Beidelman*, 182 F.3d at 234–35.

Defendants make several arguments with respect to Plaintiffs' claims. First, Defendants argue that the element of lack of privilege or justification required for a claim for tortious interference with contract, and the element of proof of a false statement required for claims of defamation, invasion of privacy, commercial disparagement and injurious falsehood are substantially dependent upon an interpretation of the Collective Bargaining Agreement. Second, Defendants argue that the Retainer Agreement itself constitutes a contract between an employer and a labor organization under section 301. The Court will address each contention in turn.

### A. Lack of Privilege

 One of the elements of a claim for tortious interference with existing or prospective contract that the plaintiff must establish prima facie is the absence of privilege or justification on the part of the defendant. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979); *Triffin v. Janssen*, 426 Pa.Super. 57, 626 A.2d 571, 574 n. 3 (1993). In determining whether a particular course of conduct lacked privilege or justification, the trier of fact must consider the following factors: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the ac-

tor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the proximity or remoteness of the actor's conduct to the interference; and (f) the relations between the parties. Restatement (Second) of Torts § 767 (1982); *Triffin*, 626 A.2d at 574; *see also Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175, 1184 (1978).

 Defendants argue that Plaintiffs' proof of the absence of privilege requires interpretation of the Collective Bargaining Agreement between the MLUA and the Leagues because Plaintiffs rely on allegations that Defendants acted to usurp rights over umpires possessed by the Leagues despite knowledge that their actions violated the Collective Bargaining Agreement. (*See* Compl. ¶¶ 61, 62.) The Court rejects this argument because the allegation that the conduct violated the Collective Bargaining Agreement is only tangential to Plaintiffs' claims.

The heart of Plaintiffs' claims are that Defendants engaged in various actions for the purpose of provoking the MLUA and the umpires to reject Plaintiffs' representation. (*See* Compl. ¶¶ 66, 67, 82, 90.) Whether the conduct also violated the Collective Bargaining Agreement is irrelevant, especially since Defendants (excluding the Umpires and Leagues) were not governed by or signatories to the Collective Bargaining Agreement. The only relevant considerations are Defendants' actual conduct, motive (to hurt Plaintiffs), and the interest they were trying to advance (to get MLUA to fire Plaintiff). The meaning of the terms of the Collective Bargaining Agreement are neither the subject of the dispute nor inextricably entwined with Plaintiffs' claims. The bare fact that the Collective Bargaining Agreement is mentioned in the Complaint's allegations is insufficient to preempt the claims. *Beidelman*, 182 F.3d at 232 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)).

### B. *Proof of Falsity*

 Defendants also argue that Plaintiffs bear the burden of proving the falsity of the alleged statements to establish a claim of defamation, invasion of privacy, commercial disparagement and injurious falsehood, and that proof of that element is substantially dependent upon an interpretation of the Collective Bargaining Agreement. After reviewing the Complaint, the Court concludes that Defendants' argument with respect to this element is also without merit.

 Plaintiffs will have to prove the false nature of the allegedly disparaging statements in any suit for invasion of privacy, commercial disparagement or injurious falsehood.[4] *See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 924 (3d Cir.1990) (commercial disparagement requires proof of falsity); *Fanelle v. Lojack Corp.*, No. CIV.A. 99–4292, 2000 WL 1801270, at *8–9 (E.D.Pa. Dec. 7, 2000) (invasion of privacy); *Pro Golf Manu. Inc. v. Tribune Review Newspaper Co.*, 761 A.2d 553, 556 (2000) (citing Restatement (Second) of Torts § 623A (1977)) (commercial disparagement and injurious falsehood). The allegedly disparaging statements identified in the Com-

---

4. Plaintiffs may also have to prove falsity to establish their defamation claim if the defamatory statements are of public concern or if they qualify as public figures. *See Tucker v. Fischbein*, 237 F.3d 275, 287–88 (3d Cir.2001) (stating that truth is ordinarily an affirmative defense under Pennsylvania defamation law except when the statement is of public concern or the plaintiff is a public figure and citing *Philadelphia Newspapers Inc. v. Hepps*, 475, U.S. 767, 771, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986)).

plaint that form the basis of these claims, however, do not require interpretation of the terms of the Collective Bargaining Agreement to establish their falsity or truth. Rather, the disparaging statements allege Plaintiffs' various ethical violations and general incompetence. (*See* Compl. ¶¶ 48, 49, 78, 100, 102, 114, 117.) As such, they are unrelated to the terms of the Collective Bargaining Agreement.

### C. *Retainer Agreement*

 Lastly, Defendants argue that the Retainer Agreement itself constitutes a contract between an employer and a labor organization that is governed by section 301 because RGPA is an employer as defined under the LMRA and the MLUA is a labor organization. Because the majority of Plaintiffs' claims involve the wrongful termination of the Retainer Agreement, the suit would be completely preempted by the LMRA and properly removable to federal court. Contrary to Defendants' assertion, however, the Retainer Agreement is not a contract governed by section 301.

Section 301 applies to "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185 (1994). The statute defines 'employer' to include any person directly or indirectly acting as an agent of an employer, where person includes individuals and corporate entities, but excludes "any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 152(2) (1994).

Defendant's argument is inconsistent with the statutory language. RGPA does not fit within the statutory definition of an 'employer' because it was an agent of a labor organization, namely the MLUA.[5] The Complaint alleges that RGPA was retained as legal counsel to the MLUA, representing the MLUA in collective bargaining negotiations. (Compl.¶¶ 44, 45, 55, 56.) Accordingly, RGPA was an agent of the MLUA. *See Peterson v. Kennedy,* 771 F.2d 1244, 1258–59 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); *Gates v. Local Union No. 14, Int'l Union of Operating Engin. AFL–CIO,* No. 85–CV–3760, 1988 WL 1953, at *5 (E.D.N.Y. Dec. 29, 1987). The Court notes that when RGPA entered into the Retainer Agreement with the MLUA, it was already MLUA's agent pursuant to an earlier retainer agreement. (*See* Compl. ¶ 45.) Since RGPA does not qualify as an 'employer' under the statute, the Retainer Agreement extending the agency relationship between RGPA and the MLUA is not a contract between an employer and a labor organization under section 301.[6]

 Furthermore, Defendants' argument is unsupported by the caselaw. While section 301 applies to contracts other than just collective bargaining agreements, "[c]ontract in labor law is a term the implications of which must be determined from the connection in which it appears." *Retail Clerks Int'l Assoc., Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 28, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962) (quoting *J.I. Case Co. v. Nat'l Labor Relations Bd.,* 321 U.S. 332,

---

**5.** The Complaint alleges and the parties do not dispute that the MLUA is a labor organization as defined in the LMRA. *See* 29 U.S.C. § 185(5) (1994).

**6.** Furthermore, under the facts alleged in the Complaint, the Retainer Agreement estab-

lishes the MLUA as Plaintiffs' employer. Since Plaintiffs are not labor organizations as defined under the LMRA, section 301 could not govern the Retainer Agreement. *See Korzen v. Local Union 705, Int'l Bhd. of Teamsters,* 75 F.3d 285, 288 (7th Cir.1996).

334, 64 S.Ct. 576, 88 L.Ed. 762 (1944)). A 'contract' within section 301 is one that is instrumental to the maintenance of labor peace between an employer and a labor organization. *Retail Clerks,* 369 U.S. at 28, 82 S.Ct. 541; *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Simple employment contracts, however, are not within the scope of section 301 even when the employer is a union. *Korzen,* 75 F.3d at 288; *Kunz v. United Food & Commercial Workers,* 5 F.3d 1006, 1009 (6th Cir.1993). The Retainer Agreement is essentially an employment contract between RGPA and the MLUA. As such, it is not within the scope of section 301.

■ Lastly, the Court notes that Defendants' approach is completely inconsistent with the goals, purposes, and context of the LMRA. Congress' purpose in enacting section 301 of the LMRA was to provide uniformity in the enforcement of collective bargaining agreements, and those contracts necessary to the maintenance of industrial labor peace. *See Lincoln Mills,* 353 U.S. at 451, 77 S.Ct. 912; *Beidelman,* 182 F.3d at 231–32. As a contract for the provision of services to the labor union, the Retainer Agreement is completely unrelated to the maintenance of labor peace of the type with which Congress was concerned when it enacted the LMRA. Acceptance of Defendants' argument would federalize any contract entered into by a labor union with an entity that has employees, regardless of whether the contract is the product of any collective bargaining on behalf of the employees of that entity or union members, or related to any labor dispute. For example, an ordinary breach of contract suit for payment on a service contract between a labor union and a janitorial company for the provision of cleaning services at a labor union's headquarters would be completely preempted by federal law. Such a result would vastly expand the reach of federal labor law past the bounds that Congress intended.

## IV. CONCLUSION

For the reasons outlined above, the Court determines that Plaintiffs' claims do not arise under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Since the Complaint states no basis supporting original jurisdiction in federal court, the Court remands this case to the Court of Common Pleas for Philadelphia County for lack of subject matter jurisdiction. An appropriate Order follows.